IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 29, 2008 Session

## STATE OF TENNESSEE v. PHYLLIS ANN AMOS

Direct Appeal from the Criminal Court for Sullivan County
No. S52, 056    Robert H. Montgomery, Jr., Judge

No. E2007-01869-CCA-R3-CD - Filed June 10, 2009

Defendant, Phyllis Ann Amos, entered pleas of guilty to possession of marijuana, a Class E felony; possession of 0.5 grams or more of cocaine, a Class B felony; maintaining a dwelling where controlled substances are kept or sold, a Class D felony; possession of drug paraphernalia, a Class A misdemeanor; and felony possession of dihydrocodone, a Class D felony. In accordance with the negotiated plea agreement, Defendant accepted concurrent sentences of eleven months, twenty-nine days for her misdemeanor conviction, one year for her Class E felony conviction, two years for each Class D felony conviction, and ten years for her Class B felony conviction. The felony sentences are as a Range I, standard offender. Following a sentencing hearing, the trial court imposed the agreed upon sentences and ordered Defendant to serve her sentences in confinement. On appeal, Defendant argues that the trial court erred in refusing to grant alternative sentencing. After a thorough review of the record, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Whitney P. Taylor, Kingsport, Tennessee, for the appellant, Phyllis Ann Amos.

Robert J. Cooper, Jr, Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, District Attorney General; and Kent Chitwood, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the guilty plea submission hearing, the State presented the following factual basis in support of Defendant's pleas of guilty:

[O]n October 22, 2005 at approximately 11 p.m. the Second Judicial Drug Task Force executed a search warrant at [Defendant's residence]. The reason for the execution of the search warrant at that residence was because in days and weeks leading up to that date the Task Force had executed or engaged in five separate controlled buys for large amounts of cocaine from that residence. They confirmed that it was in fact the defendant, Ms. Amos, that resided at that residence. On each occasion her vehicle was the only vehicle at that residence. Upon making entry into the residence the Task Force located the defendant who stated that it was her residence and that no one else lived with her. In searching the residence the Task Force located several baggies of an off-white powdery substance and a large bag of green leafy plant material. They believed that to be cocaine and marijuana respectively. They also located some Schedule IV controlled substance, pills, that she did not have a prescription for. They also located large amounts of United States currency. The drugs were sent off to the Tennessee Bureau of Investigation for analysis. It came back positive for 35 tablets of dihydrocodone, four tablets of dihydrocodone, 841.9 grams of marijuana, 392.7 grams of cocaine for one exhibit, 48.7 grams of cocaine from another exhibit. They located numerous separate bags of currency and the way the bags were bundled was also very incriminating. For example one bag contained 11 separate bundles of United States currency all bundled in $850.00 incriminates [sic]. Another, there's a Liz Claiborne purse which had 25 separate bundles of currency, each bundle was in $1000.00 incriminates [sic]. Total amount of United States currency seized from the residence was $54,031.76.

At the sentencing hearing, the State relied on the presentence report which was introduced as an exhibit without objection. Defendant did not offer any evidence at the sentencing hearing.

According to the presentence report, Defendant was sixty years old at the time of the sentencing hearing. Defendant was born in Russell County, Virginia, and completed the eighth grade. Defendant stated that both her grades and attendance were "poor." Defendant said that she dropped out of school because her mother had moved to Bristol, Tennessee, and her father was frequently absent from the home due to his job with the railroad company. Defendant is currently divorced, and she has four adult children. Defendant has no prior record of criminal convictions.

Defendant reported that she suffers from rheumatoid arthritis and non-Hodgkin's lymphoma. Defendant has held several long-term employment positions in the past, but she has been unable to work since 2003 because of her health, and she receives disability benefits. Defendant reported occasional use of alcohol but stated that she had not used illegal drugs or medication for which she did not have a prescription.

Defendant declined to give a written statement during the preparation of the presentence report, but she additionally told the probation officer, "I am so sorry about my involvement with any kind of illegal substance. I am so ashamed that I lost my right to vote. That was so important to me."

The trial court found that Defendant had a history of prior criminal behavior based on the discovery of $54,031.76 and the drugs in her home when she was arrested for the current charges. The trial court noted that in the presentence report, Defendant had listed few financial assets, was on disability, and reported $5,000.00 in credit card debt. The trial court reasoned, "Finding a significant amount of money that you have and the significant amount of drugs that you have in my opinion there's only one conclusion that you can draw from that, and that is that money was possessed either to purchase more or it was money that you received as a result of selling it, both of which are crimes."

Pursuant to the plea agreement, the judge sentenced Defendant to an effective sentence of ten years. Defendant requested alternative sentencing, and following a sentencing hearing, the trial court denied that request and ordered Defendant to serve the ten-year sentence incarcerated.

## II. Analysis

Defendant contends that the trial court erred in ordering her sentence to be served in the Department of Correction rather than on probation or on community corrections under the "special needs" provision. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. See T.C.A. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court form which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correction, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. Carter, 254 S.W.3d at 345 (quoting State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1002); State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004)).

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a

clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6) (emphasis added). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather it "shall consider" them. Id. § 40-35-102(6).

As of June 7, 2005, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation. Carter, 254 S.W.3d at 347. Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant....

T.C.A. § 40-35-103(1); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.

The determination of entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to a less beneficent alternative sentence. See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). A defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general. State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); see T.C.A. 40-35-303(b) (2006); Bingham, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will subserve the ends of justice and the best interest of both the public and the defendant. State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by Hooper, 29 S.W.3d at 9. As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303, Sentencing Comm'n Cmts.

In the instant case, Defendant was convicted of a Class B felony therefore, she should not be considered a favorable candidate for alternative sentencing. Nonetheless, she remains eligible

for an alternative sentence because her sentences were ten years or less and the offenses for which she was convicted are not specifically excluded by statute. T.C.A. §§ 40-35-102(6), -303(a).

The trial court found that Defendant lacked genuine, sincere remorse for committing the offenses in this case. The court also applied two enhancement factors in order to justify the denial of probation. The trial court determined that the amount of currency and drugs showed continuous criminal conduct by Defendant. See T.C.A. § 40-35-114(1),(2). The trial court then determined that Defendant was the leader in the commission of the offense involving two or more criminal actors. The record in this case supports the trial court's findings. Officers found 39 tablets of dihydrocodone, 841.9 grams of marijuana, and 441.4 grams of cocaine in Defendant's home. They also seized $54,031.76 from the residence. The currency was in bundles in numerous bags. For example, one bag contained eleven separate bundles of United States currency all bundled in $850.00 increments. A Liz Claiborne purse had twenty-five separate bundles of currency, and each bundle was in $1000.00 increments. Additionally, there was proof in the record that the confidential informant in this case purchased drugs from Raymond Hilliard, who purchased drugs from Defendant.

The trial court also weighed the mitigating factors in Tennessee Code Annotated section 40-35-113 and determined that none applied to Defendant. The trial court did acknowledge and gave some weight to Defendant's lack of criminal history as well as her work history prior to becoming disabled. After weighing all the factors, the trial court concluded that Defendant should serve her sentence in confinement and that probation was not appropriate.

Given the amount of drugs and money found at Defendant's residence, the ongoing criminal conduct by Defendant, and the Defendant's lack of sincere remorse, we conclude that the trial court did not abuse its discretion in denying probation. Accordingly, Defendant is not entitled to relief as to this issue.

Defendant also argues that the trial court erred in not sentencing her to community corrections, which is a form of alternative sentencing, under the "special needs" provision because of her age and various health problems. Pursuant to statute, offenders who satisfy the following minimum criteria are eligible for participation in a community corrections program:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

-5-

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses [.]

T.C.A. § 40-36-106(a). Section (c) of this same statute, which is sometimes referred to as the "special needs" provision, states:

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

In other words, felons not otherwise eligible under the criteria of subsection (a) are eligible under subsection (c) of Tennessee Code Annotated section 40-36-106 if they are unfit for probation due to a history of chronic alcohol or drug abuse or mental health problems, but their special needs are better treatable in a community corrections program than in incarceration. An offender must also be eligible, but generally unfit for probation in order to qualify for a community corrections sentence under subsection (c). State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989); State v. George C. Peery, III, No. E2008-00086-CCA-R3-CD, 2009 WL 537064, at *4 (Tenn. Crim. App., at Knoxville, Mar. 4, 2009).

However, even though an offender meets the requirements for eligibility for community corrections, he or she is not automatically entitled to such relief. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the statute provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. T.C.A. § 40-36-106(d).

The record in this case indicates that the 60-year-old Defendant has some health problems. However, we are not persuaded that her age and medical conditions qualify her for community corrections under the special needs provision. She has failed to prove that her special needs could be better met in a community corrections setting as opposed to an incarcerative one. Despite the fact that Defendant has some health concerns, she was running a fairly sizeable drug business out of her home. As noted above, officers found 39 tablets of dihydrocodone, 841.9 grams of marijuana, and 441.4 grams of cocaine in Defendant's home. They also seized $54,031.76 from the residence. At the sentencing hearing the trial court noted that the State had already taken Defendant's age and health concerns into consideration by agreeing to a 10-year sentence.

Consequently, we affirm the judgment of the trial court ordering Defendant to serve her sentence in incarceration.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE